```
IN THE UNITED STATES DISTRICT COURT
     FOR THE DISTRICT OF NEBRASKA
```

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | 8:07CR214 |
| v. | ) | |
| SAIDJON IBRAGIMOV, | ) | MEMORANDUM AND ORDER |
| Defendant. | ) | |

Before the court is the objection of the defendant, Filing No. 103, to the report and recommendation (R&R) of United States Magistrate Judge F.A. Gossett, Filing No. 97, wherein the magistrate denied defendant's motion to suppress, Filing No. 58. The defendant, a citizen of Tajikistan, is charged in a superseding indictment in Count I with conspiring to move illegal aliens within the United States in violation of 18 U.S.C. § 371; in Count IV with moving or attempting to transport an alien with the purpose of financial gain in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and 2; and in Count VI with forfeiture in violation of 18 U.S.C. § 982(a)(6)(A)(ii)(I). Filing No. 35. The magistrate recommended that the defendant's motion to suppress be denied. Defendant has filed objections to the report and recommendation, along with a supporting brief. Filing No. 103 and 104. Pursuant to 28 U.S.C. § 636, the court has conducted a *de novo* determination of those portions of the R&R to which the defendant objects. *United States v. Lothridge*, 324 F.3d 599, 600-01 (8th Cir. 2003). The court has reviewed of the entire record including the transcript of the motion to suppress hearing. Filing No. 87. The court accepts the facts set out in the R&R and they need not be repeated here, except to the extent necessary to this court's findings. The court adopts the report and recommendation in its entirety.

Following is a summary of the pertinent facts. The superseding indictment alleges that the defendant conspired with others to transport aliens from New Jersey to Nebraska. Upon arrival, defendant took the aliens to the Nebraska Department of Motor Vehicles to obtain illegal drivers' licenses. In order to obtain these licenses, defendant paid an employee of the Department of Motor Vehicles $200 or more per license. Defendant also collected between $1,500 and $2,500 from each alien. He kept part of the money and sent the remainder to the person in New Jersey who organized the transportation for the aliens.

On June 13, 2007, defendant was arrested during a traffic stop by the investigators who had been monitoring these alleged bribery/harboring incidents. Approximately fifteen others were arrested that same day. Defendant was taken to Immigration and Customs Enforcement (ICE) and placed in a detention cell by himself for six hours. He was provided a toilet, television and food in his cell. The delay occurred because of paperwork requirements and the drafting of search warrants. He was interviewed for approximately twenty minutes that evening by Special Agent Brent Morral of ICE and Investigator Charlie O'Callahan of the Nebraska State Patrol. The government contends that the questioning occurred in English and defendant received his *Miranda* rights. Defendant indicated he understood and waived his *Miranda* rights and consented to the interview. Defendant admitted he transported the aliens and accepted money from each alien. Defendant responded to the questioning in English. Filing No. 87, Tr. at 21.

Defendant objects to the findings of the magistrate. He alleges that he made statements that resulted from unconstitutional behavior on the part of law enforcement. He alleges that his statements made by him were not freely and voluntarily given; that he was not informed of his constitutional rights; that he made these statements without an

2

interpreter and without counsel; and that these tactics used to obtain his statements violated the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution. Defendant also contends that he was denied his rights to consular notification under Article 36 of the Vienna Convention.[1] Article 36(1)(b) requires authorities to notify a detained foreign national of his right to request assistance from counsel of his own state, and if requested by the defendant, to notify the consular of the arrest or detention. According to defendant, law enforcement failed to advise the Tajikistan Consulate. *Jogi v. Voges*, 480 F.3d 822 (7th Cir. 2007) (federal court has jurisdiction over civil claim relating to arrest regarding violation of Vienna Convention).[2] Defendant contends that in Tajikistan asking for an attorney means you must admit guilt, and if you refuse to sign the advisory rights document, he would have been beaten up. Filing No. 87, Tr. at 30-31. He testified he did not know the laws in the United States. *Id.* at 31. He further stated that he thought the word "waive" meant "wave." *Id.*, Tr. at 32:16-25; 33:1-4. Defendant admitted during the suppression hearing that "He speaks pretty good English. But he doesn't understand concepts." Filing No. 87, Tr. at 41.

On September 17, 2007, the magistrate scheduled a motion to suppress. At that hearing the magistrate determined he would permit the defendant to have an interpreter. Filing No. 75. On October 8, 2007, an evidentiary hearing was held on the motion to suppress. Filing No. 80. On November, 16, 2007, the magistrate issued a report and recommendation, Filing No. 97, denying the motion to suppress. The magistrate, for the

---

[1] Vienna Convention on Consular Relations, 1969 WL 97928, T.I.A.S. No. 6820, 21 U.S.T. 77.

[2] It appears the parties agree that the United States Attorney's Office and the United States Marshal's Office notified the Tajikistan Consulate or Embassy sometime after the defendant had been interrogated.

sake of this case, assumed that Article 36 of the Vienna Convention required law enforcement to notify the consular before interviewing the defendant. Even if true, the magistrate concluded that suppression in a criminal case is not a remedy for a violation of the Vienna Convention. *See Sanchez-LLamas v. Oregon*, — U.S. — 126 S. Ct. 2669, 2680 (2006). The magistrate also concluded that defendant is a conditional resident based on his marriage and that the defendant was under arrest and did receive his rights advisory. The magistrate further determined that all evidence showed there was no indication of coercion and the conversation was voluntary. *United States v. Syslo,* 303 F.3d 860, 865-66 (8th Cir. 2002). Accordingly, the magistrate issued a report and recommendation that this court deny defendant's motion to suppress.

After reviewing the record, the court agrees with the magistrate and finds that defendant received his *Miranda* rights prior to the interrogation. *Miranda v. Arizona*, 384 U.S. 436 (1966). The court further agrees with the magistrate that the defendant has sufficient understanding of the English language. The defendant's command of the English language is such that he assisted non-English speakers in obtaining licenses from the Nebraska Department of Motor Vehicles. Defendant is married to a United States citizen who is a native English speaker. Officer O'Callahan testified that during the investigation he listened to between fifteen and twenty recorded conversations with the defendant and all were in understandable English (Filing No. 87, Tr. at 6). Officer O'Callahan also listened to a transaction that took place on June 11, 2007, between the defendant and the cooperating witness where money was exchanged. That transaction took place in English

4

and was recorded.[3]  Defendant resided in the United States for three years prior to his arrest and had studied English one year prior to that time.

The court further finds that there is no evidence that law enforcement either (1) participated in inappropriate conduct, or (2) that the defendant was pressured or felt pressured to confess.  *United States v. Kime*, 99 F.3d 870, 879-80 (8th Cir. 1996).  Although defendant had to wait six hours for his interrogation, law enforcement had arrested fifteen or more people in this operation and had to book each of them.  There is no evidence that the six-hour delay was intended to pressure the defendant.  It is clear the defendant understood the nature of the offense being investigated, and it is clear he received his *Miranda* warnings prior to the interrogation.  It is also clear he understood he had a right to counsel and did not request counsel.  *Id*. at 880.

Further, with regard to the alleged violation of the Vienna Convention, it is clear that this act "does not prescribe specific remedies for violations of Article 36." *Sanchez-Llamas*, 126 S. Ct. at 2678. "Suppression would be a vastly disproportionate remedy for an Article 36 violation." *Id*. at 2681 (Supreme Court dealing with a state court suppression).  This same analysis has been applied by the federal courts.  *See, e.g., United States v. Li*, 206 F.3d 56, 60 (1st Cir. 2000); *United States v. De La Pava*, 268 F.3d 157, 165 (2nd Cir. 2001); *Murphy v. Netherland*, 116 F.3d 97, 100 (4th Cir. 1997); *United States v. Warsame*, 488 F. Supp.2d 846, 862 (D. Minn. 2007); *United States v. Bourdet*, 477 F. Supp.2d 164, 175 (D.D.C. 2007).  Accordingly, the court finds the magistrate should be affirmed in all respects.

---

[3]Although parts were difficult to hear, the parts that could be heard were clearly spoken by the defendant using the English language.

THEREFORE, IT IS ORDERED:

1. Defendant's motion to suppress, Filing No. 58, is denied.

2. Defendant's objections to the report and recommendation, Filing No. 103, are overruled.

3. The report and recommendation of the magistrate, Filing No. 97, is adopted in its entirety.

DATED this 18th day of December, 2007.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge